**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

FREDDIE LEE BELL,       :
AIS 134318,

                  :

      Petitioner,

                  :

vs.                              CA 06-0459-KD-C

                  :

WARDEN JERRY FERRELL,

                  :

      Respondent.

## <u>REPORT AND RECOMMENDATION</u>

Freddie Lee Bell, a state prisoner presently in the custody of the respondent, has petitioned this Court for federal habeas corpus relief pursuant to 28 U.S.C. § 2254. This matter has been referred to the undersigned for the entry of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(c). It is recommended that the instant petition be dismissed as time barred under the Anti-Terrorism and Effective Death Penalty Act's one-year limitation provision contained in 28 U.S.C. § 2244(d).

## <u>FINDINGS OF FACT</u>

1.      Bell was convicted in the Circuit Court of Mobile County, Alabama on April 1, 1983 of first-degree robbery. (Doc. 1, at 2) On March 16,

1984, petitioner was sentenced to a thirty-five (35) year term of imprisonment. *Bell v. State*, 466 So.2d 167, 169 (Ala.Crim.App. 1985) ("The record shows that at the time of trial the appellant was serving a term in the State penitentiary for another crime, and that prior to the initial sentencing date set by the court, he was given an early release by the prison authorities. He could not be found and brought to court for sentencing until March 16, 1984. This accounts for the delay in sentencing.").

2.     Bell's conviction and sentence were upheld on direct appeal by the Alabama Court of Criminal Appeals on February 12, 1985. *Bell v. State*, 466 So.2d 167 (Ala.Crim. App. 1985).

> The record discloses that on October 13, 1982, two black males armed with pistols, wearing stocking facemasks and traveling in a stolen automobile, pulled up to three bank tellers and a security guard in a shopping center in Mobile, Alabama. The bank personnel were employees of the Commercial Guaranty Bank of Mobile. The masked bandits robbed them of a bank bag containing bank supplies, having the approximate value of $8.00, and a .38-caliber pistol. The tellers and the guard were unable to identify the robbers. After taking the pistol and the bank bag, the robbers jumped back into their vehicle, sped across the shopping center, and after colliding with a parked vehicle, pulled up to another stolen vehicle, where they changed vehicles, leaving the first vehicle and speeding away in the second. Prior to changing vehicles the robbers had removed their masks, and during the vehicle exchange were observed by three witnesses. The witnesses were Leonard Rigsby, James Ian McIlwain, and James Green. The witnesses observed that the robber who drove the getaway car had a pistol in his hand which

2

he pointed at them. Shortly after the robbery the three witnesses were shown a photographic array or lineup by Detective Wayne Farmer of the Mobile Police Department and each of the witnesses picked the same photograph from the array and identified it as being the photograph of the driver of the getaway car during the robbery. This photograph had been taken by Detective Farmer shortly after the robbery and was a photograph of the appellant, Freddie Lee Bell. At the time the photograph was taken, appellant had long red-tinted hair, a goatee, and a mustache. At the time of trial he had cut his long hair and removed his goatee and mustache, thus altering his appearance to that extent.

Witness Leonard Rigsby testified on direct examination: "Do you see the man that you saw point that gun at you that day anywhere in this courtroom?" His answer was: "No, sir." Mr. Rigsby, further testified on direct examination that shortly after the robbery he was shown the photographic lineup or array by Detective Farmer, and he picked out a photograph and identified it as a photograph of the driver of the getaway car and the person who pointed a gun at him. He was shown the photographic array on the witness stand at trial and promptly picked the photograph which he had previously selected, and again identified it as a photograph of the driver of the getaway car. It was marked with an "X" to identify it and distinguish it from the other photographs. No objection was made by appellant to this testimony. The prosecuting attorney did not question the witness further concerning his inability to make an in-court identification, and the defense counsel did not cross-examine the witness in that regard.

The State called Detective Farmer, who testified that shortly after the robbery he showed Mr. Rigsby a spread of photographs. He identified the photographic spread which he had shown Rigsby. It was the same spread that Rigsby had just identified in his testimony. No objection was made to this testimony by appellant. The prosecuting attorney then asked Detective Farmer if witness Rigsby had picked one of the

photographs out of the line-up prior to trial. Appellant objected to this question, and the trial judge sustained the objection. Detective Farmer was asked if the appellant's photograph was in the group or spread, and over the objection of appellant, he answered in the affirmative. He was then asked to identify the appellant's photograph in the spread, and over the objection of the appellant, he identified a photograph from the group as being that of the appellant. It was the same photograph which Mr. Rigsby had just identified in his testimony from the witness stand as the photograph of the driver of the getaway car in the robbery, and was the photograph which had been marked with an "X" for identification. Farmer further testified that he was personally acquainted with the appellant and that it was he who took the photograph of the appellant and that he took it three days after the robbery. He testified that appellant's physical appearance had changed between the time the photograph was taken and the date of trial. He stated that since the photograph was taken, appellant had shortened the hair on his head and removed his facial hair. The photograph was admitted into evidence over the objection of the appellant. The substance of appellant's objections to the testimony of Detective Farmer and to the admission of the photograph was that it constituted impeachment by the State of its own witness or amounted to rehabilitation of its witness when there had been no attempt by appellant to impeach such witness.

The appellant raises only one issue on appeal, and states this issue in his brief as follows: "[Whether the] trial court erred in allowing the State to use an out-of-court identification as substantive evidence of guilt, when the eye-witness did not identify the defendant at trial." The State presents the issue somewhat differently, and states it as follows: "Whether the trial court properly allowed into evidence the testimony of Detective Sergeant Farmer identifying defendant from a series of photographs?"

Although one may not generally impeach his own witness, where a party is put to a disadvantage by unexpected

4

answers, a party may, for purposes of showing surprise or for refreshing the witness's recollection, ask his witness if he had not made prior statements contrary to his instant testimony. This is permissible, after proper predicate, even though its incidental effect is to impeach the witness's testimony. Under the theory of surprise, the prosecution may elicit from a witness testimony that he in fact made prior contradictory statements, and through questioning may further elicit from the witness the contents of prior statements through questioning. However, if the witness denies having made the prior inconsistent statements, the prosecution would not be allowed to bring in other parties to prove the contents of the prior inconsistent statements. While one's own witness may be impeached by the use of prior contradictory statements, such statements should not be treated as original evidence of the facts of the case, nor be received for any other purpose than that of contradicting or impeaching the witness.

In the instant case, it is reasonable to assume that the prosecution was surprised by witness Rigsby's testimony that he could not make an in-court identification of the appellant. He had picked out the appellant in a photographic line-up prior to trial. The prosecution certainly was put to a disadvantage to the same extent by the unexpected testimony of the witness. Under these circumstances the prosecution would have been entitled to ask the witness about his prior identification of the appellant upon laying the proper predicate. However, the prosecution did not follow this course. When Rigsby was unable to make an in-court identification of appellant, the prosecuting attorney, without attempting to lay a predicate for the purpose of showing a prior inconsistent statement, continued questioning Rigsby and elicited from him, without objection of appellant, the details concerning his extrajudicial identification of the robber which he had made at the photographic line-up. Rigsby identified the photographs which he had been shown in the pre-trial photographic spread and identified the photograph of the person he saw fleeing the scene of the robbery, which he marked with an "X" for identification. This testimony does not constitute

impeachment of witness Rigsby, as claimed by appellant. The appellant did not cross-examine Rigsby in reference to his testimony concerning the photographic line-up. The appellant made no objection to the admission of witness Rigsby's testimony concerning the photographic line-up and extrajudicial identification, and was apparently willing for it to come into evidence.

The defendant may not raise an objection to evidence for the first time on appeal, which was not raised at trial. Absent an objection and an adverse ruling nothing is presented to this court for review. Review on appeal applies only to rulings of the trial court.

> To preserve error there must be a timely and appropriate objection prior to the witness's answer to a question or a motion to exclude. Ordinarily, a witness's testimony becomes legal evidence if it is received without objection. Hearsay evidence which is admitted without objection becomes lawful evidence. The fact that evidence which is introduced in a case may be, if objected to, incompetent evidence under some one or more exclusionary rules of evidence does not destroy its probative effect, if it is admitted without objection.

Since no objection was made by appellant to the testimony of witness Rigsby concerning the photographic line-up and his extrajudicial identification of the robber, there is nothing before us for review in this regard, and we believe that any available objection which appellant may have had to this testimony was waived. This testimony was therefore before the jury for its consideration.

Appellant argues that the trial court erroneously allowed Detective Farmer to testify about Rigsby's extrajudicial identification. The record does not support the appellant's

contention that Farmer so testified. The trial court carefully prevented Farmer from testifying about Rigsby's out-of-court identification, and sustained all of appellant's objections to such testimony. As we have heretofore stated, all of the testimony regarding the extrajudicial identification came from Rigsby without objection by appellant. Farmer testified that he showed an array of photographs to Rigsby shortly after the robbery, and he identified the photographs which made up the array. They were the same photographs previously identified from the witness stand by Rigsby. No objection was made by appellant to this testimony. Farmer then, over the objection of appellant, testified that the appellant's photograph was in the array, and that he knew this of his own personal knowledge, as he was personally acquainted with the appellant and, in fact, had taken the photograph himself. At that point, over the objection of appellant, Farmer picked a photograph from the array and positively identified it as being that of the appellant. The photograph he picked was the photograph marked with an "X", which Rigsby had previously testified about and identified as a photograph of the person he observed driving the getaway car at the time of the robbery.

Evidence by a third party of an extrajudicial identification is admissible in rebuttal of testimony tending to impeach or discredit the identifying witness, or to rebut a charge, imputation, or inference of falsity. This rule has no application in the instant case, as no attempt was made by appellant to impeach or discredit the witness, Rigsby, and Farmer was not permitted to testify about Rigsby's extrajudicial identification, as alleged by appellant.

A party is not precluded by his witness's unexpectedly adverse or hostile testimony from proving by some other witness that the facts in issue were otherwise than as stated by him, even though such evidence directly contradicts and, hence, incidently discredits the witness first called by him. In *Southern Ry. Co. v. Parks*, supra, the Alabama Supreme Court stated the following: A party has the right to contradict his own witness by

independent evidence showing the facts to be different from those testified to by such witness, although the incidental effect of the introduction of such evidence is to materially discredit the witness, but a party cannot contradict his own witness where the only effect of the contradiction is to impeach the witness, and not give any material evidence upon any issue in the case.

A party may always correct or contradict the testimony of his own witness, regardless of the restrictions or limitations as to his impeachment of such witness, and such contradiction may be made without a foundation therefor or a showing of surprise. The testimony of one witness contradicting another is not an impeachment of the witness so contradicted.

The identification by Detective Farmer of the photograph of appellant tends to contradict Rigsby's statement that he could not identify the appellant in the courtroom. On the other hand, it tends to support and corroborate the testimony of Rigsby in that Rigsby's identification of the photograph as that of the robber is in fact an identification of the photograph of the appellant at the time of the robbery. The testimony of Farmer concerning the identification of the photograph of appellant was independent and relevant evidence on the important issue of identification, and was obviously not offered to impeach Rigsby, but to explain, correct, and contradict the possible adverse implications of Rigsby's failure to make an in-court identification of appellant. The State had the right to present the testimony as it did, and its admission was proper.

The witness, Rigsby, made a positive identification of the photograph soon after the robbery, when the robber's image was still fresh in his mind. He made a positive in-court identification of the same photograph. His inability to make an in-court identification of the appellant as the robber was obviously due to the alteration of appellant's appearance between the time of the incident and the trial. The detective's identification of the photograph was based on his first-hand knowledge, and his testimony was relevant to aid the jury in determining if the

person whose picture had been identified as that of the robber was the same person who sat in the courtroom as the defendant.

Witnesses James Ian McIlwain and James Green testified at trial, without objection, that they picked a photograph from the pre-trial photographic array and identified it as a photograph of the driver of the getaway car. The photograph they picked from the array was the photograph of the appellant which had been taken by Detective Farmer, and it was the same one identified by Rigsby at the pre-trial line-up and at trial. They also, without objection, identified the same photograph from the array of photographs shown to them while on the witness stand. In addition, they made a positive in-court identification of the appellant as the driver of the getaway car and the person who pointed a gun at them. It is clear from their testimony that their in-court identification was based upon their observations of the appellant at the scene of the robbery. It is equally clear that their in-court identification was not influenced or tainted by the photographic identification.

To summarize, there were three eye-witnesses involved in the identification of appellant. Two of the witnesses independently identified the appellant in court and related their prior identification as well. The third witness independently identified a photograph of the robber at trial, and related his prior identification as well. The photograph picked by the third witness at trial, and before, was the same photograph picked by the other witnesses and was a photograph of the appellant. The detective verifies that the photograph is that of the appellant. In this situation each witness's identifications, both at trial and before, corroborate the other witnesses's identifications. The witnesses constitute three independent sources of identification, each reaching the same conclusion, with one exception. That exception being that the third witness failed to make an in-court identification, which is understandable in view of the appellant's changed appearance. Great weight must be given to this collective testimony. The failure of the third witness to make an in-court identification was a fact for the jury to consider along

9

with all the other evidence of identification.

Assuming, arguendo, that the testimony of Detective Farmer concerning the photograph of the appellant was inadmissible at the time it was offered, it was rendered prejudicially innocuous by subsequent trial testimony. The rule is that testimony apparently illegal upon admission may be rendered prejudicially innocuous by subsequent or prior legal testimony to the same effect or from which the same facts can be inferred. Witnesses McIlwain and Green, without objection from the appellant, identified the same photograph previously identified by Farmer as a photograph of the robber. If Farmer's testimony was inadmissible when presented, the later testimony of McIlwain and Green to the same effect, and admitted without objection, rendered Farmer's testimony prejudicially innocuous.

It is also the rule that the admission of evidence though it be incompetent, if it be of undisputed facts, is harmless. And, the defendant cannot complain of the admission of improper evidence where he himself testified to the same facts. The record fails to disclose that appellant disputed the testimony that the photograph marked "X" was a photograph of him. In fact, the record indicates that appellant admitted on cross-examination that he was the subject in the photograph. On page R-101 of the transcript, the prosecuting attorney asked appellant the following question: "Now, that is what you looked like back then, is it not (indicating)?" Appellant's answer was, "Yes, sir." It is obvious that the prosecuting attorney was referring to the photograph in controversy, and it is equally obvious that appellant admitted that it was a photograph of him.

At trial, the case against the appellant was strong and convincing. His defense was alibi. In addition to the eyewitnesses who made positive in-court identifications of the appellant as one of the robbers, there was additional evidence presented by the State. The appellant attempted to sell a pistol to his employer several days after the robbery. He told his employer that the pistol was "hot" and might be the one used in

the bank robbery. He did not tell his employer that he did not participate in the robbery. He claimed that a person named "Gyro" had had the gun. The police and F.B.I. agents could not locate such a person and appellant's efforts to assist them in locating "Gyro" seemed less than wholehearted. One of the automobiles used in the robbery was stolen from the street in front of the house where appellant and others lived. The testimony of the appellant, as well as that of his brother, who attempted to support his alibi defense, was, to say the least, unpersuasive.

For the reasons stated we find that the trial court was not in error in admitting the testimony of witness Rigsby as to his extrajudicial identification. Likewise, we find no error in the trial court's admitting the testimony of Detective Farmer as to his identification of the photograph as that of appellant.

We have carefully searched the record for errors injuriously affecting the substantial rights of appellant and have found none.

The judgment of conviction is due to be, and is hereby, affirmed.

*Id.* at 170-175 (internal citations and case-specific quotation marks omitted).

Petitioner did not file a petition for rehearing in the Alabama Court of Criminal Appeals nor did he file a petition for writ of certiorari to the Alabama Supreme Court. (Doc. 1, at 3)

3.     On November 15, 2004, Bell filed his third[1] post-conviction collateral attack on his conviction and sentence in the Circuit Court of Mobile

---

[1]     "Bell . . . filed two post conviction petitions in the late 1980's and early 1990's." (Doc. 14, at 2 ¶ 2)

County, Alabama. (Doc. 14, Exhibit A) The trial court summarily denied the

Rule 32 petition on January 13, 2005 and, on May 20, 2005, the Alabama

Court of Criminal Appeals affirmed the trial court's decision by memorandum

opinion. (*Id*.)

      In his petition, Bell claimed that he was convicted of first-degree robbery, but had been indicted for second-degree robbery. He also claimed that there was a fatal variance between the indictment against him and the proof presented at trial. On appeal, Bell reiterates his claims and contends that the circuit court erred by denying his petition.

      "[W]hen the facts are undisputed and an appellate court is presented with pure questions of law, that court's review in a Rule 32 proceeding is de novo." Ex parte White, 792 So.2d 1097, 1098 (Ala. 2001). "If the circuit court is correct for any reason, even though it may not be the stated reason, we will not reverse its denial of the petition. See Roberts v. State, 516 So.2d 936 (Ala.Cr.App. 1987)." Reed v. State, 748 So.2d 231, 233 (Ala.Crim.App. 1999).

      Initially, we note that Bell's claim that there was a fatal variance between the indictment against him and the proof presented at trial did not implicate the subject matter jurisdiction of the trial court and, therefore, was subject to preclusion under Rule 32. See Daniels v. State, 650 So.2d 544, 551 (Ala.Crim.App. 1994). Accordingly, this claim was precluded by the period of limitations in Rule 32.2(c), and summary disposition thereof was appropriate. See Rule 32.7(d), Ala.R.Crim.P.

      As for Bell's indictment claim, we note that the indictment against Bell charged that he

      "did[,] in the course of committing a theft of

> office supplies . . ., use force against the person of [the victim], with intent to overcome her physical resistance or physical power of resistance, while [Bell], or another participant in the theft, was armed with a deadly weapon, to-wit: a gun, in violation of § 13A-8-41 of the Code of Alabama."

> (C. 33.) Section 13A-8-41 states that, in order for a person to commit the crime of first-degree robbery, the person must violate § 13A-8-43, Ala. Code 1975, and must be "armed with a deadly weapon or dangerous instrument[] or [c]auses serious physical injury to another." Section 13A-8-43, Ala. Code 1975, provides, in pertinent part, that a person commits the crime of third-degree robbery "if in the course of committing a theft he [u]ses force against the person of the owner or any person present with intent to overcome his physical resistance or physical power of resistance . . . ." The indictment tracked the language of the statute and sufficiently apprised Bell of the charge against him; therefore, the indictment was sufficient. Smith v. State, 797 So.2d 503, 515 (Ala.Crim.App. 2000). Because Bell failed to state a claim upon which relief could be granted, summary disposition thereof was appropriate.

> For the reasons stated above, the judgment of the circuit court is affirmed.

(*Id.*) Bell's petition for writ of certiorari to the Alabama Supreme Court was denied on August 12, 2005. (Doc. 14, Exhibit B)

4.      On August 11, 2005, Bell filed another Rule 32 petition in the Circuit Court of Mobile County, Alabama, his fourth collateral attack on his conviction and sentence. (Doc. 14, Exhibit C) The trial court summarily dismissed Bell's Rule 32 petition and, on January 26, 2006, the Alabama Court

of Criminal Appeals affirmed the dismissal of the petition by memorandum

opinion. (*Id.*)

   In his petition Bell claimed that the trial court did not have jurisdiction to render judgment or to impose sentence because, according to Bell, bank robbery, the conduct underlying his robbery conviction, concerns federal subject matter jurisdiction. Absent a response from the State, the circuit court summarily dismissed the petition on the grounds that there was no variance between the proof at trial and the indictment--a claim not raised in the petition. We note that this claim was raised in the petition Bell filed prior to the instant petition.

   Bell reiterates his claim on appeal and claims that he is entitled to a hearing on what he contends is a meritorious claim. He also claims that the circuit court's ruling should be reversed because the trial court's order was not responsive to his claim.

   In reviewing the circuit court's denial of Bell's petition, we will affirm the circuit court "[i]f the circuit court is correct for any reason, even though it may not be the stated reason . . . . See <u>Roberts v. State</u>, 516 So.2d 936 (Ala.Cr.App. 1987)." <u>Reed v. State</u>, 748 So.2d 231, 233 (Ala.Crim.App. 1999); <u>Ex parte City of Fairhope</u>, 739 So.2d 35, 39 (Ala. 1999).

   There was no jurisdictional impediment to the State trying Bell for bank robbery. Bell's crime was subject to prosecution by the State for first-degree robbery and by a federal district court for bank robbery. See <u>Brown v. United States</u>, 551 F.2d 619, 620 (5th Cir. 1977) ("Although both convictions were for the same acts they were obtained by separate sovereigns under separate laws; thus, such convictions do not amount to double jeopardy.["].] . . . Thus, Bell was properly prosecuted for the offense of first-degree robbery under § 13A-8-41, Ala. Code 1975.

   As this claim is not jurisdictional, it is precluded by: Rule

32.2(b), Ala.R.Crim.P., because there has been no assertion establishing "good cause" for failing to raise the claim in Bell's first petition; Rule 32.2(c), Ala.R.Crim.P., because Bell's petition was filed outside the limitations period; and by Rules 32.2(a)(3) and (5), Ala.R.Crim.P., because the claim could have been, but was not, raised at trial and on appeal. Additionally, as the premise of Bell's claim is incorrect, the claim has no merit.

For the reasons set forth above, the circuit court's summary dismissal of Bell's petition is affirmed.

(*Id.*) Bell's petition for writ of certiorari to the Alabama Supreme Court was denied on April 14, 2006. (Doc. 14, Exhibit D)

5.      On August 3, 2006, Bell filed the present section 2254 petition in this Court.  (*See* Doc. 1, at 13-14 (petition signed by Bell on foregoing date and this date is the date of the certificate of service))

## **CONCLUSIONS OF LAW**

1.      The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") was enacted on April 24, 1996 and, pertinent to this case, added a new subdivision to 28 U.S.C. § 2244 providing for a one-year period of limitations within which state prisoners must file their habeas corpus petitions pursuant to 28 U.S.C. § 2254.  *Wilcox v. Florida Dept. of Corrections*, 158 F.3d 1209, 1210 (11th Cir. 1998) *cert. denied sub nom. Wilcox v. Moore*, 531 U.S. 840, 121 S.Ct. 103, 148 L.Ed.2d 62 (2000).

(d)(1) A 1-year period of limitation shall apply to an application

for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of—

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2)  The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

2.      Subsections (B), (C), and (D) of § 2244(d)(1) clearly do not apply to petitioner's case and therefore, the timeliness of Bell's petition must be calculated under § 2244(d)(1)(A) based upon the date on which his conviction became final.  "For prisoners whose convictions became final prior to the effective date of the AEDPA, the one-year statute of limitations

16

instituted by the AEDPA began to run on its effective date, i.e., April 24, 1996." *Guenther v. Holt*, 173 F.3d 1328, 1331 (11th Cir. 1999) (citations omitted), *cert. denied*, 528 U.S. 1085, 120 S.Ct. 811, 145 L.Ed.2d 683 (2000). This rule from *Guenther* is applicable in this case since Bell's conviction became final in early 1985, that is, on or about March 2, 1985. *See* Ala.R.App.P. 41(a) ("The certificate of judgment of the court shall issue 18 days after the entry of judgment unless the time is shortened or enlarged by order. The timely filing of an application for rehearing[2] will stay the certificate of judgment until disposition of the application unless otherwise ordered by the court. If the application is denied, the certificate of judgment shall issue 18

---

[2]        Under Alabama law, "[a]n application for rehearing and the brief in support of the application must be filed with the clerk of the appropriate appellate court within 14 days (2 weeks) of the date the decision being questioned is issued[.]" Ala.R.App.P. 40(c). The filing of an application for rehearing is a prerequisite for certiorari review by the Alabama Supreme Court. Ala.R.App.P. 40(d)(1) ("In all criminal cases except pretrial appeals by the state, the filing of an application for rehearing in the Alabama Court of Criminal Appeals is a prerequisite to certiorari review by the Alabama Supreme Court."). Bell's failure to file an application for rehearing in the Alabama Court of Criminal Appeals and, thereafter, to seek certiorari review by the Alabama Supreme Court prevented the court of last resort in Alabama from considering his direct appeal; therefore, the Supreme Court of the United States clearly would have been unable to consider Bell's case on direct review. *See Pugh v. Smith*, 465 F.3d 1295, 1299 (11th Cir. 2006) ("The Supreme Court of the United States may grant a writ of certiorari to review the final judgment of 'the highest court of a State in which a decision could be had.' . . . A defendant has 90 days from the judgment of the state court of last resort to file a petition for a writ of certiorari in the Supreme Court of the United States. . . . In the absence of a clear statutory or constitutional bar to higher state court review . . . the Supreme Court requires petitioners to seek review in the state's highest court before filing a petition for writ of certiorari.").

days after entry of the order denying the application unless the time is shortened or enlarged by order."). Accordingly, Bell's limitations period commenced on April 24, 1996 and expired on April 23, 1997, *see Guenther, supra*, 173 F.3d at 1331, some nine years before he filed his § 2254 application.

3.      Bell is unable to take advantage of the tolling provision built into § 2244(d), 28 U.S.C. § 2244(d)(2) ("The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this section."); *Guenther, supra*, 173 F.3d at 1331 ("'The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation in [subsection (d)].'"), because the collateral attacks on his conviction and sentence upon which he attempts to rely were not filed until November 15, 2004 and August 11, 2005,[3] respectively, that is, after the one-year statute of limitations expired under § 2244(d)(1). *Cf. Webster v. Moore*,

---

[3]      Bell's two collateral attacks on his conviction and sentence filed in the late 1980's and the early 1990's do not have any impact upon the Court's analysis of this issue since the one-year limitations period did not begin to run until April 24, 1996. Tellingly, petitioner makes no argument that either of these petitions tolled the limitations period. (*See* Doc. 18)

199 F.3d 1256, 1259 (11th Cir.) ("Under § 2244(d)(2), even 'properly filed' state-court petitions must be 'pending' in order to toll the limitations period."), *cert. denied*, 531 U.S. 991, 121 S.Ct. 481, 148 L.Ed.2d 454 (2000).

4.    Bell asserts that the statute of limitations contained in 28 U.S.C. § 2244(d)(1) should not bar his petition since equitable tolling principles apply.  (*See* Doc. 18) It is Bell's contention that since he is actually innocent of the charge this Court should equitably toll the limitations period. (*Id.* at 3-8)

5.    Recent decisions of the Eleventh Circuit have clearly embraced the doctrine of equitable tolling with regard to the one-year limitations period at issue:  "Equitable tolling is to be applied when '"extraordinary circumstances" have worked to prevent an otherwise diligent petitioner from timely filing his petition.'  . . .  Thus, the petitioner must show both extraordinary circumstances and due diligence in order to be entitled to equitable tolling." *Diaz v. Secretary for the Dept. of Corrections*, 362 F.3d 698, 700-701 (11th Cir. 2004) (citation omitted). "Section 2244 is a statute of limitations, not a jurisdictional bar. Therefore, it permits equitable tolling 'when a movant untimely files because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence.'" *Steed v. Head,* 219 F.3d 1298, 1300 (11th Cir.2000) (citation omitted).  Thus, the one-year

limitations provision need not be equitably tolled unless there is evidence that "extraordinary circumstances" beyond petitioner's control made it impossible for him to file his petition on time. *See Miller v. New Jersey State Dept. of Corrections*, 145 F.3d 616, 618-619 (3rd Cir. 1998) ("[E]quitable tolling is proper only when the 'principles of equity would make [the] rigid application [of a limitation period] unfair.' . . . Generally, this will occur when the petitioner has 'in some extraordinary way . . . been prevented from asserting his or her rights.' . . . The petitioner must show that he or she 'exercised reasonable diligence in investigating and bringing [the] claims.' . . . Mere excusable neglect is not sufficient."); *Calderon v. United States District Court for the Central District of California*, 128 F.3d 1283, 1288 (9th Cir. 1997) ("Equitable tolling will not be available in most cases, as extensions of time will only be granted if 'extraordinary circumstances' beyond a prisoner's control make it impossible to file a petition on time."), *cert. denied*, 522 U.S. 1099, 118 S.Ct. 899, 139 L.Ed.2d 884 (1998) and *cert. denied sub nom. Beeler v. Calderon*, 523 U.S. 1061, 118 S.Ct. 1389, 140 L.Ed.2d 648 (1998).   "The burden of establishing entitlement to this extraordinary remedy plainly rests with the petitioner." *Drew v. Department of Corrections*, 297 F.3d 1278, 1286 (11th Cir. 2002), *cert. denied sub nom. Drew v. Crosby*, 537 U.S. 1237, 123

S.Ct. 1364, 155 L.Ed.2d 205 (2003). Because of the onerous nature of the burden on petitioners, the Eleventh Circuit has "rejected most claims for equitable tolling." *Diaz, supra*, 362 F.3d at 701(citations omitted). In this case, Bell does not argue that extraordinary circumstances beyond his control prevented him from filing a timely petition for writ of habeas corpus in this Court and, therefore, he is ineligible to take advantage of the type of equitable tolling recognized in this circuit. *Sibley v. Culliver*, 377 F.3d 1196, 1204 (11th Cir. 2004) ("'In order to be entitled to the benefit of equitable tolling, a petitioner must act with diligence, and the untimeliness of the filing must be the result of circumstances beyond his control.' . . . Sibley makes no effort to demonstrate that he meets these criteria, and so is ineligible for equitable tolling.").

6.     The Eleventh Circuit, to date, has not decided "whether there is an 'actual innocence' exception to AEDPA's one year statute of limitations." *Helton v. Secretary for the Department of Corrections*, 259 F.3d 1310, 1315 n.2 (11th Cir. 2001) (citation omitted), *cert. denied sub nom. Helton v. Moore*, 535 U.S. 1080, 122 S.Ct. 1965, 152 L.Ed.2d 1025 (2002). In *Wyzykowski v. Department of Corrections*, 226 F.3d 1213, 1218 (2000), the Eleventh Circuit held that "the factual issue of whether the petitioner can make a showing of

actual innocence should be first addressed, before addressing the constitutional

issue of whether the Suspension Clause requires such an exception for actual

innocence." Following *Wyzykowski* and *Sibley*, this Court should "decline to

reach the merits of this issue because, even assuming that § 2244's limitations

period could not be constitutionally applied to a prisoner who made a

sufficient showing of actual innocence," 377 F.3d at 1205, Bell has failed to

do so. In this instance, of course, Bell contends that he has established, through

new evidence, his factual innocence of the crime for which he was convicted.

> In *Schlup v. Delo*, 513 U.S. 298, 317, 115 S.Ct. 851, 862, 130 L.Ed.2d 808 (1995), the Supreme Court held that a prisoner attempting to make such a showing must raise "new facts" that cast "sufficient doubt upon [his] guilt to undermine confidence in the result of a trial without the assurance that the trial was untainted by constitutional error." In practical terms, this means that the petitioner must show that "'a constitutional violation has probably resulted in the conviction of one who is actually innocent.' To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Id*. at 327, 115 S.Ct. at 867 (*quoting Murray v. Carrier*, 477 U.S. at 496, 106 S.Ct. at 2649).

*Sibley, supra*, 377 F.3d at 1205; *see also Schlup v. Delo*, 513 U.S. 298, 324,

115 S.Ct. 851, 865, 130 L.Ed.2d 808 (1995) (A claim of actual innocence

"requires petitioner to support his allegations of constitutional error with new

reliable evidence--whether it be exculpatory scientific evidence, trustworthy

eyewitness accounts, or critical physical evidence--that was not presented at trial."). While petitioner has provided this Court with certain documents (FBI interviews, etc.) he claims were not presented at his trial over twenty (20) years ago (*see* Doc. 1, Attachments; Doc. 18, Attachments), this evidence simply does not provide any basis for this Court to second-guess the jury's verdict. In fact, one of the FBI interviews which Bell has provided this Court serves only to underscore the jury's verdict inasmuch as it contains the information that the eyewitness "advised that the photograph of Freddie Lee Bell looked identical to the black male that was driving the aforementioned Chevrolet sedan prior to entering the Plymouth Duster that sped away from the Bel Air Mall parking lot." (Doc. 1, Attachment 1) Nothing in this compilation amounts to exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence which tends to establish that petitioner is not guilty of first-degree robbery as the testimony of at least two eyewitnesses established during his trial more than twenty years ago. Because Bell has failed to make a sufficient showing of actual innocence, this Court need not address the issue of whether there is an "actual innocence" exception to AEDPA's statute of limitations.

      7.      Because petitioner did not file his habeas corpus petition until

August 3, 2006, over nine years after the one-year limitations period expired, his petition is due to be dismissed as time-barred pursuant to 28 U.S.C. § 2244(d).

## **<u>CONCLUSION</u>**

The Magistrate Judge recommends that the instant petition be dismissed as time-barred pursuant to 28 U.S.C. § 2244(d).

The attached sheet contains important information regarding objections to the report and recommendation of the Magistrate Judge.

**DONE** this the 7th day of December, 2006.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND
RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND
FINDINGS CONCERNING NEED FOR TRANSCRIPT**

l.      ***Objection***.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the Clerk of this court.  Failure to  do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.      ***Transcript (applicable Where Proceedings Tape Recorded)***.  Pursuant to 28 U.S.C. § 1915 and FED.R.CIV.P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.


s/WILLIAM E. CASSADY
UNITED STATES MAGISTRATE JUDGE